**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 15, 2019**

# In the Court of Appeals of Georgia

A19A1118. ANDERSON v. THE STATE.

GOBEIL, Judge.

Following a jury trial, Nijee Anderson was convicted of robbery by sudden snatching (Count 1), possession of methamphetamine (Count 2), possession of a drug related object (Count 3), and two counts of simple battery (Counts 4 and 5). Anderson filed a motion for new trial, which the trial court denied. Anderson appeals, contending that (i) the evidence was insufficient to sustain his convictions; (ii) trial counsel provided ineffective assistance in failing to timely communicate a plea offer from the State; and (iii) the trial court erred in failing to merge the simple battery charge in Count 4 into the robbery by sudden snatching charge in Count 1. For the reasons that follow, we affirm the judgment below, but we vacate the sentence for the

simple battery charge in Count 4 with instruction that it be merged with the robbery by sudden snatching charge in Count 1.

Viewed in the light most favorable to the verdict,[1] the evidence adduced at trial shows that on October 16, 2016, the victims, Alfredo Monselvo and Victor Aliaz,[2] went to a Flash Foods gas station in Houston County to put air in a tire on Monselvo's car. While the victims were handling the tire, Anderson approached them. Anderson tried to start a conversation and requested money from Aliaz. When Monselvo told Anderson to leave them alone and that they did not have any money, Anderson reacted angrily and punched Monselvo in his face. During the attack, Monselvo's car keys fell from Monselvo's pocket onto the ground. Anderson

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt. 2781, 61 LE2d 560) (1979).

[2] In the indictment, the first victim is identified as "Monselvo Alfredo" and the second victim's last name is spelled "Elias." In the trial transcript, however, the first victim stated that his name is "Alfredo Monselvo" . The trial transcript spells the second victim's last name as "Aliaz." Despite the inconsistencies in setting forth the victims' names, Anderson does not dispute that the identities of the victims. "[A] variance that exists between the victim's name as alleged in the indictment and as proven at trial is not fatal if the two names in fact refer to the same individual, such as where a mere misnomer is involved[.]" *Cockrell v. State*, 248 Ga. App. 359, 362 (2) (545 SE2d 600) (2001) (citation, punctuation and footnote omitted).

immediately grabbed Monselvo's car keys and refused Monselvo's requests to return them.

Monselvo went inside the gas station and asked the cashier to call the police and report the incident. While the cashier was speaking with the 911 operator, Monselvo and the cashier observed Anderson slap Aliaz in his face "real hard."

When the police arrived at the scene, Aliaz snatched the car keys out of Anderson's hand. The responding officer obtained statements describing the incident from the victims and the cashier. The officer observed that Monselvo had reddening to the right side of his face, and Aliaz had reddening to the left side of his face in the form of a hand print, which were consistent with their descriptions of Anderson's attack. The officer also took photographs of the victims' faces depicting their injuries. Based upon his investigation at the scene, the officer determined that Anderson was the aggressor during the incident. Anderson was arrested for the simple batteries of the two victims.

During a pat-down search of Anderson's pockets incident to his arrest, the officer found several items, including a clear plastic bag containing a crystal-like substance in an empty cigarette pack, a spoon with burn marks on the bottom of it,

and a clear glass pipe.[3] In addition, the officer discovered a syringe containing a clear substance inside a backpack that Anderson was carrying. The officer testified that he had experience investigating methamphetamine crimes and was familiar with the appearance of methamphetamine, which he described as a clear, crystal, shard-like substance. The officer further testified that based on his knowledge of how methamphetamine can be ingested, a spoon is used to heat methamphetamine until it turns into a liquid, a glass pipe is used to smoke methamphetamine, and a syringe is used to inject methamphetamine.

Field testing of the substances found inside Anderson's clear plastic bag and syringe yielded positive results for methamphetamine. The substance inside the clear plastic bag was sent to the GBI Crime Lab for additional testing. The forensic chemist who tested the substance was qualified as an expert at trial. The forensic chemist testified that the substance tested positive for methamphetamine, a Schedule II controlled substance, and weighed less than one gram.

Anderson was charged with robbery by sudden snatching, possession of methamphetamine, possession of a drug related object, and two counts of simple

---

[3] The police investigation, Anderson's arrest, and Anderson's search incident to arrest were recorded by the responding officer's body camera. The body camera footage was introduced into evidence and played for the jury at trial.

battery. At trial, the jury found Anderson guilty on all counts. The trial judge sentenced Anderson to a total of ten years, to serve three years in confinement and the remainder on probation.

1. On appeal, Anderson contends, generally, that the evidence was insufficient to sustain his convictions. His contention is without merit.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [Anderson] no longer enjoys a presumption of innocence. In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *McGhee v. State*, 303 Ga. App. 297, 297 (1) (692 SE2d 864) (2010)(citations and punctuation omitted). We apply this standard to address Anderson's sufficiency claim.

(a) *Robbery by sudden snatching*. "A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y sudden snatching." OCGA § 16-8-40 (a) (3). "[T]he immediate presence of the victim stretches fairly far, and robbery convictions are usually upheld even out of the physical presence of the victim if what was taken was under his control or his responsibility and if he was not too far distant[.]" *Brown*

5

*v. State*, 309 Ga. App. 511, 513-514 (1) (710 SE2d 674) (2011) (punctuation and footnote omitted). Moreover, "[f]orce is implicit in sudden snatching, both as a fact and as a legal proposition, the force being that effort necessary for the robber to transfer the property taken from the owner to his possession." *Dotson v. State*, 160 Ga. App. 898, 899 (1) (288 SE2d 608) (1982) (citation omitted).

The evidence in this case showed that before the incident, Monselvo had his car keys in his pocket. During Anderson's attack, Monselvo's car keys fell from Monselvo's pocket onto the ground. Anderson immediately grabbed Monselvo's car keys from the ground in Monselvo's immediate presence and refused to return them. This evidence was sufficient to establish Anderson's commission of the robbery by sudden snatching offense. See *Brown*, 309 Ga. App. at 513-514 (1) (affirming conviction for robbery by sudden snatching when defendant took a wallet from the victim's immediate presence and the victim was conscious of the robbery as it occurred); *Dotson*, 160 Ga. App. at 899 (1) (affirming conviction for robbery by sudden snatching when defendant distracted the victim and snatched the victim's property).

(b) *Possession of methamphetamine*. OCGA § 16-13-30 (a)[4] prohibits the possession of any controlled substance. OCGA § 16-13-26 (3) (B) identifies methamphetamine as a Schedule II controlled substance. During the pat-down search of Anderson's person incident to his arrest, the officer discovered a clear plastic bag containing a crystal-like substance that subsequently tested positive as methamphetamine. This evidence overwhelmingly established Anderson's guilt of this drug possession offense. See *McGhee*, 303 Ga. App. at 298 (1) (a) (testimony that methamphetamine was found in defendant's wallet during the pat-down search incident to his arrest was sufficient to support conviction for possession of methamphetamine).

(c) *Possession of a drug related object*. OCGA § 16-13-32.2 (a) prohibits the possession with the intent to use any object for the purpose of injecting a controlled substance. Upon searching Anderson's backpack, the officer discovered a syringe containing a substance that tested positive as methamphetamine. The officer testified that, based upon his experience with investigating drug crimes, the syringe was used for injecting methamphetamine. Based upon this evidence, Anderson's conviction for

_____

[4] OCGA § 16-13-30 (a) pertinently states, that "it is unlawful for any person to . . . possess[] or have under his or her control any controlled substance."

7

possession of a drug related object was authorized. See *McGhee*, 303 Ga. App. at 299 (1) (b) (evidence was sufficient to sustain defendant's conviction for possession of drug-related object when a small glass pipe containing methamphetamine residue was found in defendant's pocket during the pat-down search incident to his arrest, and the deputy having experience investigating drug crimes testified that the pipe was used for smoking methamphetamine).

(d) *Simple battery*. "A person commits the offense of simple battery when he . . . [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another[.]" OCGA § 16-5-23 (a) (1). "Physical contact is required to prove simple battery." *Hancock v. State*, 188 Ga. App. 870, 871 (374 SE2d 757) (1988).

Anderson was charged with one count of simple battery based on his act of slapping Monselvo in the face. He was charged with a second count of simple battery based on his act of slapping Aliaz in the face. The trial evidence shows that during the incident, Anderson became aggressive and struck both Monselvo and Aliaz in their faces with his hand. This evidence authorized Anderson's convictions for simple battery. See *Bedley v. State*, 189 Ga. App. 90, 90-91 (1) (374 SE2d 841) (1988) (defendant's simple battery conviction was authorized by testimony from the victim

8

and a witness stating that the defendant slapped the victim); *Hancock*, 188 Ga. App. at 871 (affirming defendant's simple battery conviction when the indictment alleged that defendant committed the offense by "striking the [victim] about the body with his fist," and the State met its burden of proof based on evidence that defendant struck the victim with his hand).

2. Anderson also claims that trial counsel provided ineffective assistance in failing to timely communicate a plea offer from the State. Again, his claim provides no basis for reversal.

> [W]hether a defendant has received constitutionally ineffective assistance of counsel presents a mixed question of law and fact. [W]hen reviewing a trial court's decision [on] a motion for new trial based on ineffective assistance of counsel, we defer to the trial court's findings of fact unless clearly erroneous, but owe no such deference to its conclusions of law which we apply independently to the facts.

*State v. Lexie*, 331 Ga. App. 400, 400 (771 SE2d 97) (2015) (citations omitted). We recognize that "[a] defendant is entitled to be fully informed of certain consequences of his decision to accept or reject a plea offer, including the right to the informed legal advice of counsel regarding the possible sentences that could be imposed following a conviction at trial." *Gramiak v. Beasley*, 304 Ga. 512, 514 (I) (A) (820

9

SE2d 50) (2018). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in [*Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)]." *Missouri v. Frye*, 566 U. S. 134, 140 (II) (A) (132 SCt 1399, 182 LE2d 379) (2012). To prevail on a claim of ineffective assistance of counsel in the context of a plea bargain, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, 566 U. S. 156, 162-170 (II) (A), (B) (132 SCt 1376, 182 LE2d 398) (2012); *Lexie*, 331 Ga. App. at 401.

> Because the courts of this State are obligated to follow the rulings of the United States Supreme Court with respect to the Sixth Amendment standard for determining prejudice in cases asserting ineffective assistance of counsel, Georgia courts must apply the standard established in *Lafler* and *Frye* for demonstrating compliance with the Sixth Amendment right of counsel in cases involving plea offers.

*Gramiak*, 304 Ga. at 515 (I) (B).

At the motion for new trial hearing, Anderson's trial counsel testified regarding the plea discussions that he had with the prosecutor and Anderson. According to trial counsel, on the afternoon before the beginning of trial, the prosecutor made a plea

10

offer that was contingent upon the prosecutor's ability to locate the State's witnesses. The offer was communicated to trial counsel by phone, while he was on his way to a hearing in another county. Trial counsel met with Anderson later that evening, they reviewed the offer, and Anderson agreed to accept it. Trial counsel tried to call the prosecutor later that evening at 9:30 p.m. to communicate Anderson's acceptance of the plea offer, but it was after normal business hours. When trial counsel arrived in court the next morning, the prosecutor withdrew the plea offer because the State had found their witnesses.[5] The jury had already been seated, and the trial proceeded that morning.

Anderson also testified at the motion for new trial hearing. Anderson recalled that his trial counsel had spoken to him in jail regarding the plea offer, and that he agreed to accept the offer. Nevertheless, there was no evidence that Anderson's

[5] Anderson has not alleged error on the ground of the prosecutor's decision to withdraw the plea offer on the morning of trial. "[U]ntil accepted, the State may withdraw a plea offer at any time (unless for consideration the State has agreed otherwise)." *Scott v. State*, 302 Ga. App. 111, 115 (3) (690 SE2d 242) (2010). A defendant's purported acceptance of any plea offer must be communicated to the prosecuting attorney to constitute acceptance prior to withdrawal. *Sparks v. State*, 232 Ga. App. 179, 183 (3) (c) (501 SE2d 562) (1998). Because there was no consideration binding the prosecutor to keep the plea offer open until the morning when the trial was to begin, the prosecutor was authorized to withdraw the plea offer before communication of its acceptance was made. See id.

decision to accept the plea offer was communicated to the prosecutor prior to the morning of trial.

Anderson has not demonstrated that trial counsel was deficient in failing to timely communicate the plea offer under the circumstances presented. To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed in an objectively unreasonable way "considering all the circumstances and in the light of prevailing professional norms." *Yarn v. State*, 305 Ga. 421, 426 (4) (826 SE2d 1) (2019). Here, the evidence shows that trial counsel had in fact promptly communicated the plea offer to Anderson on the same day that the offer was made.[6] There is no evidence indicating that trial counsel performed in an objectively unreasonable way and contrary to prevailing professional norms under these circumstances.

Moreover, Anderson's assertion of trial counsel's deficient performance fails since neither trial counsel nor Anderson could recall the exact terms of the plea offer. Trial counsel claimed that the plea offer was for a probated sentence. Anderson

---

[6] Anderson concedes that there is no rule requiring defense counsel to abandon their obligations and immediately communicate a plea offer within a few hours of receiving a plea offer from the prosecutor. Trial counsel did not violate prevailing professional norms by meeting with Anderson to discuss the plea offer on the same day that the plea offer was received.

claimed that the plea offer involved pleading to the drug charges and dropping the rest of the charges, but he could not recall the sentence offered. The same prosecutor who presented the State's case at trial also defended against Anderson's motion for new trial at the hearing. The prosecutor disputed the testimony regarding the plea offer, and he informed the trial court that no plea offer for straight probation was ever made. The conflicts between the recollections of the terms for the plea offer presented a question of credibility for the trial court's determination. "When considering claims of ineffectiveness of counsel, the trial judge determines witness credibility and is not required to accept the defendant's version of events." *Ansley v. State*, 325 Ga. App. 226, 235 (4) (a) (750 SE2d 484) (2013) (citation and punctuation omitted). The trial court favored the prosecutor's recollection regarding the plea offer and concluded that trial counsel was not deficient in failing to plead Anderson to probation because such was not an available option. Anderson has shown neither deficient performance nor prejudice to the extent that he was seeking straight probation, which the prosecutor testified was never an option in the plea offer. See *Taylor v. State*, 298 Ga. App. 145, 147 (2) (b) (679 SE2d 371) (2009) (defendant failed to demonstrate that his counsel rendered deficient performance in failing to advise him of a plea offer when there was no competent evidence showing that the State had actually made the alleged plea

13

offer). Compare *Syms v. State*, 331 Ga. App. 225, 227-228 (770 SE2d 305) (2015) (concluding that the trial court erred by denying defendant's motion to enforce a plea agreement where an agreement as to terms was clearly made, but the State had changed its mind and no longer wanted to honor the plea agreement).

Pretermitting whether trial counsel rendered deficient performance by failing to timely communicate Anderson's acceptance of the plea offer to the prosecutor before its withdrawal, Anderson nevertheless has failed to show the required element of prejudice.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed . . . because of counsel's deficient performance, defendants must demonstrate . . . a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. *Frye*, 566 U. S. at 147 (II) (C). In other words, a defendant is required to show that the accepted plea offer would have been adhered to by the prosecution and accepted by the trial court. See id. at 147 (II) (C), 150 (III). Here, Anderson did not present any evidence establishing this standard. Particularly in light of Anderson's inability to show the terms of the purported plea offer, Anderson has not established that the plea offer would have been accepted by the trial court. As a result, Anderson's claim of ineffective assistance of counsel fails.

3. In his last claim of error, Anderson asserts that the trial court erred in failing to merge the simple battery charge in Count 4 into the robbery by sudden snatching charge in Count 1. Based on the indictment's allegations and the trial evidence establishing the offenses, we must agree.[7]

> Under OCGA § 16-1-7 (a) (1), when the same conduct establishes the commission of more than one crime, a defendant may be prosecuted for both crimes, but cannot be convicted of more than one crime if one crime is included in the other. For purposes of merger, one crime is included in another if either it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the other crime charged or if the included crime differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person or a lesser kind of culpability suffices to establish its commission.

*Brockington v. State*, 316 Ga. App. 90, 92 (1) (728 SE2d 753) (2012) (citation omitted). "Whether offenses merge is a legal question, which we review de novo." *Lucas v. State*, 328 Ga. App. 741, 743 (1) (760 SE2d 257) (2014) (footnote omitted).

---

[7] Anderson's sentences for the crimes ran concurrently. Regardless, merger of convictions is required even when all sentences run concurrently. See *Nazario v. State*, 293 Ga. 480, 482-483 (1), 491-492 (3) (d) (746 SE2d 109) (2013) (addressing merger issues when all of the sentences ran concurrently).

15

It is undisputed that simple battery is not, as a matter of law, a lesser included offense of robbery by sudden snatching since the elements required to prove each offense are different. Simple battery focuses on injury to the person while the robbery by sudden snatching offense involves the taking of property from the person of another. See OCGA §§ 16-5-23 (a) (1) (simple battery), 16-8-40 (a) (3) (robbery by sudden snatching). Cf., *Givens v. State*, 184 Ga. App. 498, 500 (3) (361 SE2d 830) (1987) (ruling that simple battery is not, as a matter of law, a lesser included offense of robbery by force). Thus, the question in this case is whether the simple battery offense should have been merged into the robbery by sudden snatching offense as a matter of fact.

> The key question in determining whether a merger has occurred [as a matter of fact] is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge.

*Bonner v. State*, 308 Ga. App. 827, 830 (2) (709 SE2d 358) (2011). As indicted in this case, Anderson's charges for robbery by sudden snatching in Count 1 and simple battery in Count 4 both involved Anderson's act of striking Monselvo. Specifically, the indictment averred that Anderson committed the offense of robbery by sudden

16

snatching in that Anderson "caused [Monselvo] to drop his car keys on the ground by slapping him, grabbed the keys, and refused to return them[.]" Anderson's act of slapping Monselvo was alleged as part of the robbery purportedly to reflect the force necessary for Anderson to transfer Monselvo's car keys to his possession. See *Dotson*, 160 Ga. App. at 899 (1) (the force for robbery by sudden snatching is the "effort necessary for the robber to transfer the property taken from the owner to his possession."). In setting forth the simple battery offense, the indictment also averred that Anderson "slapp[ed] [Monselvo] in the face[.]" "Averments in an indictment as to the specific manner in which a crime was committed are not mere surplusage." *Talton v. State*, 254 Ga. App. 111, 112 (1) (561 SE2d 139) (2002). The State therefore was required to prove that Anderson struck Monselvo in the commission of both offenses. Id.

At trial, Monselvo testified that Anderson struck him in the face once. Because the simple battery was established by proof of the same or less than all the facts required to support the robbery by sudden snatching offense as charged, those offenses should have merged for purposes of sentencing. See *Bonner*, 308 Ga. App. at 831 (2) (concluding that the battery convictions merged with the robbery conviction since the evidence of simple battery was the same evidence required to

show the force used to accomplish the robbery). In light of the trial court's failure to merge the simple battery offense into the robbery by sudden snatching offense, we must vacate the sentence and remand the case to the trial court for resentencing.

*Judgment affirmed in part, sentence vacated and case remanded for resentencing. Dillard, P. J., and Hodges, J., concur.*